**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHAHN W. MITCHELL, | |
| Plaintiff, | Civ. No.  11-4118 (KM) |
| v. | **O P I N I O N** |
| CONTINENTAL AIRLINES, INC., | |
| Defendant. | |

*Appearances by:*

Shahn W. Mitchell
1436 Clinton Avenue
Irvington, NJ 07111

> *Pro Se Plaintiff*

Elena Chkolnikova, Esq.
Peter Michael Avery, Esq.
Rosemary Joan Bruno, Esq.
BUCHANAN INGERSOLL & ROONEY PC
550 Broad Street, Suite 810
Newark, NJ 07102

> *Attorneys for Defendant*

**DEBEVOISE, Senior District Judge**

This case arises out of claims for harassment, hostile work environment, race and

disability discrimination and retaliation, and wrongful suspension in violation of the Americans

with Disabilities Act of 1990, 42 USC 12101 et seq. ("ADA") and Title VII, as a result of the

seeking of disability benefits for Acute Stress Disorder pursuant to the Family and Medical

Leave Act ("FMLA"), 29 USC § 2601 *et seq.*

Continental Airlines, Inc. ("Continental") seeks summary judgment dismissing the complaint for failure to establish race and disability discrimination under Title VII and the ADA. For the reasons stated below, the motion for summary judgment is GRANTED as to all counts.

## I.      BACKGROUND

*Pro Se* Plaintiff Shahn Mitchell worked for Continental as a Customer Service Agent team leader.   The duties for this position include the supervision of agents assigned to a particular gate in the loading and transporting of passenger bags for each flight.  In December 2010, Mr. Mitchell initiated this lawsuit and protested two instances of disciplinary action by Continental.  The essence of the Complaint is that Mr. Mitchell was subject to a harassment, hostile work environment, race and disability discrimination and retaliation, and wrongful suspension as a result of his seeking FMLA disability benefits.

As discussed in further detail below, Mr. Mitchell requested a physician-recommended flexible work schedule due to trauma resulting from a December 2009 incident of police intimidation.  Specifically, Mr. Mitchell sought an adjusted leave schedule to be exempt from mandatory overtime hours beyond the regular eight-hour day, and leave to attend monthly therapy sessions which could not be scheduled during non-working hours.

The two disciplinary incidents which Mr. Mitchell takes issue with are:  (1) a discussion in November 2008 with supervisor Don Bailey, and (2) his suspension in March 2010 after a March 22, 2010 episode in the attendance office with Managing Director Stefan Mayden.

On November 24, 2008, Mr. Mitchell was issued a "documented discussion" by Manager Don Bailey for reasons not material to this action.  (Avery Decl. Ex. D.)  On November 29, 2008, Mr. Mitchell emailed a complaint to Stefan Mayden about Mr. Bailey's harassing conduct. (Avery Decl. Ex. E.)  The complaint included no allegation of discrimination. (Id.)  The record

2

does not indicate that the disciplinary action was appealed pursuant to company policy. (Avery Decl. Ex. D.)

Mr. Mitchell repeatedly sought FMLA leave to attend to his ill grandmother, although the Continental attendance office repeatedly reaffirmed that he was not eligible for such leave. (Avery Decl. Ex. F, Ex. L.)  Reports by the administrative employees indicate that Mr. Mitchell was "very difficult to talk to" regarding the denied request and that he has had "a history of making trouble in our office." (Avery Decl. Ex. F, Ex. L.)

In December 2009, Mr. Mitchell was involved in an incident with the Irvington Police in which an officer pulled his gun on him. (SUMF ¶ 22.)  Nine days after the incident, Mr. Mitchell reported to the hospital that he was anxious, stressed, and suffered occasional headaches. (SUMF ¶ 23, 24.)  On January 15, 2010, Mr. Mitchell submitted to the Continental attendance office a physician's note of a behavioral health psychiatric evaluation, which indicated that a FMLA form would be delivered by January 22, and that Mr. Mitchell's work days should be limited to eight hours. (Avery Decl. Ex. N.)  On January 18, 2010, Continental issued a letter indicating to Mr. Mitchell that his FMLA form was incomplete.  (Avery Decl. E. O.)

*The FMLA Certification Form*

On January 22, 2010, Mr. Mitchell submitted to Continental a Healthcare Provider Certification by Dr. Ostella. (Avery Decl. Ex. A., Tr. 155:16-23, Avery Decl. Ex. P.)  The Certification indicates that Mr. Mitchell suffered from Acute Distress Disorder, prescribed a continuing regimen of medication, and approximated that eight to twelve additional monthly visits were required. (Id.)  Additionally, Dr. Ostella specified that Mr. Mitchell was limited from performing his job functions due to his condition, and as a result he would be unable to perform work functions which require him to work more than an eight hour shift per day. (Id.)  Dr.

3

Ostella reiterated that his work schedule needs should be limited to eight hours per day, for an undetermined amount of time at present. (Id.)  Last, Dr. Ostella noted that the condition would not cause episodic flare-ups that would periodically prevent Mr. Mitchell from performing his job function.  (Id.)

As a result of the diagnosis by Dr. Ostella, Mr. Mitchell sought FMLA leave to cover two days which he had already taken off on January 4, 2010 and January 6, 2010; leave to take time off for such future monthly 30-45 minute therapy sessions that could not be scheduled during non-work hours; and a restriction from working mandatory overtime hours beyond the regular eight hour day.

On January 26, 2010, Continental informed Mr. Mitchell that his FMLA request for leave taken on January 4 and 6 was not approved because the absence does not qualify for leave under the Company's Family/Medical Leave policy.  The letter also informed that "[i]n reviewing the certification you submitted, however, we noticed that your doctor has indicated that you may have some medical restrictions on your ability to perform the essential functions of your job, particularly working as required beyond an 8-hour shift." (Avery Decl. Ex. Q.)  The letter provided that Mike Cheeseman of Human Resources would follow up to discuss the outstanding issues.  (Id.)

Around mid to late February, Mr. Mitchell was told by Mr. Cheeseman that his physician would need to submit additional explanation regarding the proposed eight-hour restriction, and that such documentation should be submitted to Laura D'Angelo. (SUMF ¶  36.)  Mr. Mitchell did not think the request for additional information was unreasonable, however directed the individuals to the contents of the FMLA Certification already submitted, and expressed to Ms. D'Angelo that the individuals making the decision to grant his FMLA leave should be medically

certified.  (Avery Decl. Ex. A, Tr. 159:4 – 161:12.)  On March 15, 2010, Mr. Mitchell emailed a

FMLA/Attendance Point Update Request based on his conversation with Mr. Cheeseman.

(Avery Decl. Ex. S.)  Therein, Mr. Mitchell relayed that Mr. Cheeseman had indicated that the

FMLA denial was made by unauthorized parties who were not medically qualified. (Id.)  Further,

Mr. Mitchell indicated that he asked his physician to submit additional explanation to Ms.

D'Angelo regarding the eight-hour restriction.  According to the email, Mr. Mitchell's lack of

attendance at work on January 4 and 6 for his medical treatment resulted in 2 Attendance Points

which caused him to be on a Written Disciplinary Warning. (Id.)

   *The March 22 Episode and Resulting Suspension*

  On March 22, 2010, Mr. Mitchell went to the administrative office to discuss his

attendance situation and the FMLA Request.  According to Mr. Mitchell, he went to the office to

see if the documentation from his physician was received. (Pl.'s Resp. SUMF ¶ 44.)  However,

an argument erupted between Mr. Mitchell and Ms. D'Angelo which resulted in Eugene Utset

being summonsed and a verbal altercation between Mr. Mitchell and Mr. Utset.  Various

employees reported that Mr. Mitchell was increasingly argumentative and non-cooperative with

Ms. D'Angelo.  On March 23, 2010, Mr. Mitchell emailed a complaint to Mr. Cheeseman and

others about the episode the day prior.  (Avery Decl. Ex. Y.)  This complaint did not suggest any

discrimination based on race or otherwise, however affirmed that the basis for the visit to the

Administrative Office was to check on his qualification for FMLA leave.

  After the March 22, 2010, Mr. Mitchell was placed on a paid investigatory suspension

until April 1, 2010. (Avery Decl. Ex. Z.)  On March 26, 2010, Mr. Cheeseman and another

individual from Human Resources met with Mr. Mitchell to afford him the opportunity to tell his

side of the March 22 episode. (Tr. 92:13-20.)  An investigation resulted in a finding that Mr.

Mitchell was not threated or disrespected during the episode (Avery Decl. Ex. FF.)  On April 24, 2010, Mr. Mitchell was issued a letter summarizing the investigation and its findings, notifying that he was being issued a termination warning for his conduct and would be suspended for three days, which was counted as time served because Mr. Mitchell was already on paid disciplinary suspension. (Avery Decl. Ex. CC.)  On May 26, 2010, Mr. Mitchell confirmed that his hourly pay was being reduced by $1.75. (Avery Decl. Ex. DD.)  On May 27, 2010, Mr. Mitchell confirmed that he was downgraded from team leader due to the termination warning for the March 22 incident. (Avery Decl. Ex. EE.)  On June 1, 2010, Mr. Cheeseman sent Mr. Mitchell a letter indicating that his investigation did not substantiate Mr. Mitchell's allegations that he was threatened or disrespected on March 22.  (Avery Decl. Ex. FF.)

*Submission of additional FMLA information*

On June 14, 2010, Mr. Mitchell submitted additional explanation about his need for an exemption from the mandatory overtime hours. (Avery Decl. Ex. GG.)  Specifically, Continental received a letter from a mental health professional, Andrea B. Goldberg, a Licensed Clinical Social Worker, from Newark Beth Israel Medical Center.  (Avery Decl. Ex. GG.)  Therein, Ms. Goldberg informed Mr. Cheeseman that Mr. Mitchell was a patient at the outpatient mental health clinic and is being treated for trauma.  Ms. Goldberg provided that Mr. Mitchell needed a form of trauma treatment called individual EMDR (Eye Movement Desensitization and Reprocessing) psychotherapy.  Ms. Goldberg further instructed that Mr. Mitchell "needs a medical accommodation of no more than eight hours work per day to ensure that he will have reduced stress and get sufficient rest in order to fully recover." (Id.)

In late June or early July, Mr. Mitchell met with Mr. Cheeseman and Tony Smith to discuss the proposed work restriction. (Tr. 164:5-20.)  After the meeting, Mr. Cheeseman

explained to Mr. Mitchell that the company could grant his request to work a reduced schedule by shifting him to a part-time status or by allowing him to take a leave of absence, explicitly without a guarantee that the job position would be available upon his return. (Avery Decl. Ex. HH; Tr. 165:18-166:18.)  According to Mr. Mitchell, he could not have shifted to a part-time schedule in mid-August because it would have presented a financial hardship. (SUMF ¶ 66.)  A letter dated August 10, 2010 by Mr. Cheeseman summarized the meeting and described that "the essential functions of this position require, among other things, the ability to work any shift assigned within a 24 hour/day, 7 days/week operation including weekends, holidays and overtime as needed." (Avery Decl. Ex. HH.)

Between January and July 2010, Mr. Mitchell attended at least five appointments at the St. Barnabas Behavioral Health Center.  On July 19, 2010, Mr. Mitchell filed an EEOC charge in which he described as follows:

> On or about March 22, 2010 I was suspended by the Director of Operations.  I also have a disability that my employer is aware of and I was denied FMLA.

> Based on this information I believe that I have been discriminated against based on my race and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, (Title VII), and my disability in violation of the Americans with Disability Act of 1990, as amended, (ADA).

> (Avery Decl. Ex. JJ.)

In support of his claim that he was retaliated against for his filing of an EEOC charge, Mr. Mitchell cites an August 2009 disciplinary action and the March 22, 2010 incident. (SUMF ¶ 86.)[1]

---

[1]     Notably, these disciplinary actions predate the EEOC filing, and therefore cannot be the subject of a harassment claim related to its filing.

On December 10, 2010, Mr. Mitchell initiated this lawsuit in the Superior Court of New Jersey Law Division Essex County, in which he detailed that he was subject to harassment on March 22, 2010, in continuation of prior harassment which occurred on November 24, 2008.  He described the relevant causes of action as hostile work environment, retaliation, disability discrimination, and harassment.  Therein, Mr. Mitchell described that Continental did not allow him to receive "full Therapy for traumatic Event also It [sic] subject me to behavior that was not acceptable by Continental Airlines and Its Executives named in Grievance." (Avery Decl. Ex. KK.)

The only discovery propounded in this matter is interrogatories, which Continental responded to by producing Mr. Mitchell's personnel file and related documents.  The only deposition is that of Mr. Mitchell which was taken by Continental's counsel.  The Court is presented with Continental's motion for summary judgment, Mr. Mitchell's opposition to Continental's statement of undisputed material facts which includes little if any legal argument, and Continental's reply brief.

## II.   DISCUSSION

### A.  Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Id.

Summary judgment will not be denied based on mere allegations or denials in the pleadings; instead, some evidence must be produced to support a material fact. Fed. R. Civ. P. 56(c)(1)(A); United States v. Premises Known as 717 S. Woodward Street, Allentown, Pa., 2 F.3d 529, 533 (3d Cir. 1993). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).

> [Rule 56] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

However, the Court will view any evidence in favor of the nonmoving party and extend any reasonable favorable inferences to be drawn from that evidence to that party. Hunt v. Cromartie, 526 U.S. 541, 552 (1999). See also Scott v. Harris, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (The district court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion.").

Further, the Court must apply a more liberal standard of review to claims presented by a Plaintiff filing *pro se*. Haines v. Kerner, 404 U.S. 519, 520 (1972); see also United States ex. rel Montgomery v. Brierley, 414 F.2d 552 (3d Cir. 1969). The Third Circuit Court of Appeals advises that a petition made without the benefit of counsel must be read with a measure of tolerance. Wade v. Yeager, 377 F.2d 841, 846 (3d Cir. 1967).

**B. Analysis**

9

### a.  Claims related to Racial Discrimination

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against an employee because the individual's race, color, religion, sex, or national origin.[2] Additionally, Title VII provides an anti-retaliation provision, which protects employees from retaliation from their employers for opposing an unlawful employment practice.[3]  Thus, "only complaints about discrimination prohibited by Title VII – that is, discrimination on the basis of race, color, religion, sex, or national origin, 42 U.S.C. 2000e-2 – constitute "protected activity." Davis v. City of Newark, 417 Fed. Appx. 201, 202-03 (3d Cir. 2011) (quoting Barber v. CSX Distrib. Servs., 68 F.3d 694, 701-02 (3d Cir. 1995).  "[F]or a complaint to amount to 'protected

---

[2]  42 U.S.C.S. 2000e-2(a) provides that it shall be unlawful for an employer:

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
> (2) to limit, segregate, or classify his employers or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

[3]    42 U.S.C. 2000e-3(a) provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . .  because he has opposed any practice made an unlawful employment practice by this title [42 USCS §§ 2000e-2000e-17], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title [42 USCS §§ 2000e-2000e-17].

activity,' it must implicate an employment practice made illegal by Title VII.  General complaints of unfair treatment will not suffice." Id. (internal references omitted.)

Mr. Mitchell's racial discrimination claim hinges on two disciplinary incidents, the November 2008 "documented discussion" with Mr. Bailey and his March 2010 suspension after the incident in the attendance office with Mr. Mayden.  However, Mr. Mitchell filed the EEOC charge on July 19, 2010, which is more than 300 days of the November 2008 incident. Therefore, any claim based on the November 2008 incident is time-barred pursuant to 42 U.S.C. 2000e-5(e)(1).  See also Watson v. Eastman Kodak Co., 235 F.3d 851, 854-55 (3d Cir. 2000).

Moreover, Mr. Mitchell's deposition testimony clearly and repeatedly provides that he did *not* believe that the conducted directed towards him was based on his race.  Nor does Mr. Mitchell contend the same now.  Mr. Mitchell testified as follows:

> Q:  Do you believe that anything in Mr. Bailey's conduct or communications with you in November 2008 was based on your race?
> A: No.
>
> (SUMF ¶ 73.)
>
> Q:  Did you believe that Mr. Mayden's communications or conduct with you on March 22, 2010 were based on your race?
> A: No, I do not.
> Q:  And the same question as to the email you referred to from Stefan Mayden?
> A:  No.
>
> (SUMF  ¶ 75.)
>
> Q:  Do you believe that anything in Eugene [Utset's] conduct in those meetings or on March 22, 2010 was based on your face?
> A:  No.
>
> (SUMF ¶ 77.)
>
> Q:  Do you believe that anything in Brian McCaffrey's conduct on that occasion was based on your race?

A:  No.

(SUMF  ¶ 81.)

Similarly, Mr. Mitchell testified that his retaliation and hostile work place environment

claims are not based on race-based discrimination.  (<u>See</u> SUMF ¶ 82.)  For example, Mr.

Mitchell admitted:

> Q. My question was, did you claim in any of the grievance
> proceedings for the discipline that we discussed today, or did you
> claim to HR, that any of that discipline was based on your race?
>
> A: No.

(SUMF ¶ 84, Tr. 123:4-9.)

Mr. Mitchell has not produced any evidence of race-based discrimination.  Since Mr.

Mitchell cannot show that the conducted was directed at him because of a protected

characteristic or activity, his Title VII claims fail.

### b.  Claims related to Disability Discrimination

Mr. Mitchell's disability discrimination claim is difficult to decipher based on his *pro se*

status.  The essence of his "discrimination based on medical" claim is that Continental unjustly

denied him FMLA leave when he could not attend such monthly therapy sessions which could

only be scheduled during working hours, and when Continental denied his physician-

recommended restriction from mandatory overtime hours.  Mr. Mitchell therefore claims that he

was discriminated against and harassed based on his pursuit of his FMLA leave.  Mr. Mitchell

frames his claim as one of disability discrimination in violation of the ADA. (EEOC Compl.,

Avery Decl. JJ.)  Although he describes his Complaint in part as taking issue with retaliation,

disability discrimination, and harassment related to Continental's preventing him from seeking

full therapy for the traumatic event, notably absent from both his EEOC Complaint and his

Complaint is an express invocation of a FMLA cause of action.  Plaintiff is the master of his

Complaint and has failed to plead violations of the FMLA therein, or within his opposition to the motion which solely consists of his opposition to the statement of undisputed material facts and little if any legal argument.  Continental's motion for summary judgment avoids reading such a cause of action into the Complaint and focuses on the lack of evidence suggesting disability discrimination pursuant to the ADA.  Embedded within Continental's argument is reference to the sufficiency and validity of the certification process set forth by the FMLA, in addition to the accommodation process pursuant to a FMLA request for leave.  Because Defendants only move for dismissal on the ADA claim, and the parties have not briefed the availability of a FMLA claim, the decision herein is limited to the ADA.[4]

The ADA prohibits discrimination based on disability.  Disability is defined by the ADA as "(A) a physical or mental impairment that substantially limits a major life activity; (B) a record of such impairment; or (C) being regarded as having such an impairment [.]"  42 U.S.C. 12102 (1).  "Major life activities" under the Act include, but are not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 USC 12102(2)(A).  However, a "temporary non-chronic impairment of short duration is not a disability covered by the [ADA]." Macfarlan v. Ivy Hill SNF, LLC, 675 F.3d 266, 274 (3d Cir. 2012) (quoting Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 380 (3d Cir. 2002)).

There is no indication here that Mr. Mitchell's mental impairment substantially limits his ability to work.  Dr. Ostella approximated that eight to twelve additional monthly therapy

---

[4]     It is not apparent to the Court at this time that there might be a viable FMLA claim here; however Mr. Mitchell might consider appointment of counsel to file an Amended Complaint that would allow him to advance this point.

sessions would be required to treat his Acute Distress Disorder.  Months later, Ms. Goldberg, his LCSW, provided no indication of a chronic diagnosis requiring long term treatment.  No record evidence suggests otherwise.  Indeed Dr. Ostella specified on the FMLA Certification that his condition would not be subject to flare-ups that would periodically prevent him from performing his job function.  Both Dr. Ostella and Ms. Goldberg were authorized by the relevant statutory scheme provided by the FMLA certification process to assess Mr. Mitchell's condition.[5]  In sum, the ADA does not afford Mr. Mitchell any relief because he does not suffer from a disability as defined therein.

### III.    CONCLUSION

For the foregoing reasons, Continental's motion for summary judgment is GRANTED.  Accordingly, Mr. Mitchell's Title VII claims are dismissed.  Additionally, the ADA claim for disability-based discrimination is dismissed.  The Complaint is therefore dismissed without prejudice. The Court shall enter an Order implementing this Opinion.

**/s/ Dickinson R. Debevoise**

**DICKINSON R. DEBEVOISE, U.S.S.D.J.**

**Dated:  March 20, 2014**

---

[5]    According to FMLA, the term "health care provider" includes a doctor of medicine authorized to practice medicine by the State in which the doctor practices, or any other person determined by the Secretary to be capable of providing health care services. 28 USC 2611(6). This term includes clinical social workers authorized to practice under state law and who are performing within the scope of their practice. 29 CFR 825.125(b)(2).